# UNITED STATES DISTRICT COURT
# SOUTHER DISTRICT OF OHIO

TIMOTHY ERWIN                                    )    CASE NO. 16-1166
323 Main St.                                     )    Judge _____
Morrow, Ohio 45152                               )
                                                 )
       Plaintiff,                            )
                                                 )
VS.                                              )    **COMPLAINT**
                                                 )
VILLAGE OF MORROW, OHIO                          )
150 E. Pike Street                               )    **JURY DEMAND ENDORSED HEREIN**
Morrow, Ohio 45152                               )
                                                 )
       Defendants.                           )
                                                 )

## I.     Recitals-Jurisdiction-Parties

1. This is an action under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) and other provisions of the Federal and State law to correct unlawful employment practices on the basis of disability, age, retaliation, and related employment rights and to make whole plaintiff Timothy Erwin.

2. Plaintiff also claims wrongful discharge in violation of public policy under common law.

3. Timothy Erwin (hereinafter "Erwin" or "Plaintiff") was an employee of the Village of Morrow, Ohio in its public works department, part-time from May 15, 2003, for a period of approximately two years and full-time with benefits from approximately 2005 to March 11, 2015.

4. The Defendant is the Village of Morrow, Ohio, located at 150 E. Pike Street, Morrow, OH 45152, acting through its Village Council and Village Administrator (hereinafter "Village" or "Defendant").

5. On March 10, 2016, the Village Council of the Village, by a vote of three to two (with two recusals) voted to terminate the employment of Plaintiff.

6. By letter dated March 11, 2015, then-Village Administrator, Rodney S. Smith, informed Plaintiff that he had been terminated.

7. Defendant improperly discharged the Plaintiff.

1

8. Defendant engaged in unlawful employment practices under 42 U.S.C. 2000 e-5 (f) (1) and in violation of public policy.

9. The persons implementing the unlawful practices were the Village Council and at the direction of Council (Not including those who reclused themselves), the Administrator of the Village of Morrow, Rod Smith, both located at 150 E. Pike Street, Morrow, OH 45152.

10. This court has jurisdiction over the legal actions alleged herein for the reasons that all the parties reside within the United States District Court for the Southern District of Ohio, Western Division, and all the actions complained of occurred within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division.

11. A copy of the charge filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiff is attached as Exhibit 1.

12. The notice of right to sue was issued by EEOC as provided in Exhibit 2.

13. This court has jurisdiction under the Americans with Disabilities Act (hereinafter "ADA") as provided and 42 USC sections 12101 *et seq.*

14. The Defendant has further engaged in age discrimination under the Age Discrimination Act (hereinafter "ADEA") as provided under 29 USC 626e *et seq.*

15. The Village has more than 20 employees and is obligated to follow the provisions of ADEA, Americans with Disabilities Act (hereinafter "ADA") and not engage in protected retaliatory practices.

16. The Village, the Village Council and the Administrator are all required to follow the provisions of the United States Code as detailed in the ADEA and ADA and not engage in protected retaliatory practices.

## II.    Facts

17. Plaintiff re-alleges paragraphs 1 through 16, the same as if fully rewritten herein.

18. Plaintiff is 57 years old.

19. The Plaintiff, Erwin, was hired by the Village on May 15, 2003, at a rate of $7.50/hour, on a part-time basis, to perform job duties that included mowing grass, village maintenance and trash removal, maintenance for the water plant and taking water samples to be tested by the Environmental Protection Agency.

20. The Village has a personnel policy and procedure manual. When he was hired, Erwin was required to sign a document acknowledging receipt of the employee manual. He never saw a copy of the manual.

21. The Village's employee manual includes a section (8.1) setting forth its discipline policy and reasons for discipline, including conviction of a criminal offense and

discourteous and/or unprofessional treatment of the public. There is a hierarchy, including verbal warning, written warning, suspension from duty without pay, demotion in rank and/or salary and dismissal, which was not followed before terminating Plaintiff.

22. Within approximately two years, Plaintiff became a full-time employee with Defendant, entitling him to health insurance, vesting in the Ohio Public Employee Retirement System (hereinafter "PERS"), government holidays (except when he was called to work on Village-related affairs), overtime pay, medical, dental, optical, and pharmaceutical insurance, life insurance, and sick pay benefits of 2.5 days for every 80 hours worked.

23. Erwin was never disciplined, had a good attendance record and was considered a model employee by his superiors.

24. Plaintiff's ending rate of pay was $15.00 per hour. His gross reported income, including overtime pay, from work for the Village during 2014 was approximately $30,750.

25. Plaintiff now works part-time as a driving instructor for Jack's Driving School. His income from work in 2015 was approximately $15,000 and he expects his income for 2016 to be approximately $10,000 or $11,000.

26. Plaintiff, Erwin, beginning in 2012, while in the course of his employment with the Defendant, the Village, became the subject of harassment and stalking by one Bruce Miller, a disgruntled ex-employee of the Village, ultimately culminating in events that resulted in Plaintiff's suffering from depression, anxiety, nightmares and PTSD.

27. Bruce Miller served as a member of the Village Council from January 2010, until his resignation in August 2010, following his arrest on charges of public intoxication.

28. Bruce Miller was an employee of the Village in a maintenance position, reporting directly to Plaintiff, from approximately 2008 until he left employment with the Village.

29. Bruce Miller's employment was terminated when the Village determined that he had to be replaced after a two-year leave of absence for heart problems when his doctor did not clear him to return to work.

30. Bruce Miller blamed Plaintiff for the termination of his employment with the Village, stating "Erwin, you're going to pay."

31. In late 2012, Bob Miller (a relative of Bruce Miller), a former zoning inspector for the Village, was convicted of operating an illegal water tap, essentially stealing water over a 20-year period from a public utility operated by the Village of Morrow.

32. In approximately 2012, the Village discovered the illegal water tap while the county was excavating and hit an unauthorized water line.

33. Bob Miller is Bruce Miller's brother.

34. Upon information and belief, Bruce Miller blamed Plaintiff for his brother's conviction.

3

35. Plaintiff's brother, Michael Erwin, was the mayor of the Village during the relevant period and was engaged in an effort to clean up public corruption in the Village.

36. Plaintiff was associated with his brother in this regard and therefore was looked upon with disdain by members of the Village Council associated with Bruce Miller and Bob Miller and who opposed Plaintiff's brother's policies in support of eliminating public corruption, *viz.*, Yorkie Bryant, Becky Isaacs-Neimish and Bill Thompson.

37. In retaliation for what he perceived (inaccurately) as actions of Erwin in furtherance of the pursuit by the Village of charges against his brother and in furtherance of the termination of his own employment, Bruce Miller began a campaign of harassment, taunting, threatening, and stalking that ultimately led Erwin on October 12, 2012, to file a petition in Warren County Common Pleas Court for an *ex parte* civil stalking protection order (CSPO).

38. The petition for CSPO against Bruce Miller was granted on February 12, 2013.

39. Continuing the harassment of Erwin, on January 16, 2014, Bruce Miller filed an *ex parte* CSPO against Erwin, which was granted initially but on March 24, 2014 the petition was dismissed and the CSPO lifted.

40. Following the issuance of this first civil protection order against Bruce Miller, the stalking of Erwin continued.

41. On May 1, 2014, a criminal complaint was filed alleging that Bruce Miller had violated the CSPO and Bruce Miller was arrested and booked. The charge was not dismissed until September 23, 2014.

42. On July 7, 2014, Bruce Miller was arrested and booked for violation of the civil protection order for a second time and was awaiting a pretrial hearing on July 23, 2014. Ultimately, on September 23, 2014, he was found guilty of disorderly conduct, a reduced charge.

43. On July 15, 2014 Bruce Miller's daughter, Theresa Mitchell, filed a false menacing complaint against Erwin with the Warren County Sheriff's Department, resulting in the physical arrest of Erwin.

44. Theresa Mitchell made two 911 calls, crying hysterically and falsely stating she was terrified of Erwin due to his alleged outrageous conduct in connection with her father, that he had followed her before on multiple occasions, and that on July 15, 2014, he was following her in his Village-owned truck during working hours, blocking her from driving her car out of a parking space, circling her two times and staring at her, all which was without basis in law or fact.

45. In fact, on that day Erwin called both the Mayor of the Village and his immediate supervisor for advice what to do because Theresa Mitchell (whom he did not then recognize) was following him in her car and taking pictures of him as he was working – picking up trash at Vale Funeral Home and obtaining more trash bags from the Village building/garage.

4

46. Plaintiff also called his co-worker, Mike Hanna, to advise that he keep an eye out for a black SUV that was following Plaintiff.

47. Charges against Erwin in Warren County Common Pleas Court were pending from July 15, 2014 until September 23, 2014, (when the charges were dismissed by the prosecutor), during which period Erwin feared for his freedom, incurred additional legal fees in defending himself against false menacing charges and suffered further.

48. As a result of the arrest, Erwin suffered humiliation, depression, nightmares, fleeting thoughts of suicide and anxiety and became reclusive, fearing running into people he had known his whole life after they had heard about his arrest.

49. After Plaintiff's arrest, Bruce Miller posted information on Erwin's arrest on a Facebook page he maintained starting in April 2012, called "Village of Morrow."

50. Defendant knew about the Facebook page that was designed to lead readers to believe it was maintained by the Village, but was not successful in forcing Bruce Miller to take it down, even though many Village residents were confused because they believed it was the Village's official page.

51. Erwin was thus further humiliated, and publicly embarrassed by the publishing of information on his arrest and other derogatory information on what many residents believed was the Village's official Facebook page.

52. During the period August 13, 2014 through March 24, 2015, Erwin sought mental health treatment from a counsellor at Hope Restored Counselling Services in Loveland, Ohio, Beata Bartler, M.A., PCC, using the insurance benefits through his employer, the Village.

53. Erwin was diagnosed by Beata Bartler with symptoms including high emotional distress, anxiety, fear, and depression, which, she said, prevented him from working.

54. As the result of his humiliation, high emotional distress, anxiety, fear and depression, and the diagnosis of Post-Traumatic Stress Syndrome by his counsellor, during September 2014, Erwin informed Rod Smith, his immediate supervisor, that he had been diagnosed with PTSD and wanted to take an administrative leave of absence from his job. Rod Smith, the Village Administrator, informed Erwin that he could take an administrative leave, with pay, for whatever period he needed.

55. Erwin's symptoms as described by Beata Bartler resulted in his having or being regarded by his employer as having an impairment that substantially limited his performing one or more major life activities under § 12102(2)(A). He was off work with his disability from July 15, 2014, to the date of his termination on March 11, 2015.

56. According to a March 13, 2015 report from his counsellor, Beata Bartler, Erwin had symptoms of depression, anxiety, recurring nightmares, loss of appetite and sleep and feelings of deep sadness, helplessness and hopelessness about the future. "… [these] symptoms cause clinically significant distress and interfere with Mr. Erwin's daily functioning." Exhibit 3.

57. During his time off work on administrative leave, Erwin regularly communicated with Rod Smith, Village Administrator, to let him know of his mental health condition. Rod Smith assured Erwin that he could return to work as soon as he felt he was ready.

58. During Erwin's administrative leave, the Village engaged Andrea Ostrowski, Attorney at Law, to perform an independent investigation into Erwin's employment with the Village, "recent allegations involving Tim Erwin" and how, if at all, "the behaviors" should affect Tim's employment with the Village. She was engaged because the mayor, Erwin's brother, felt he could not conduct an independent investigation. Under her employment agreement with the Village, Ms. Ostrowski was to prepare a written report of the investigation and provide it to the Village Solicitor for presentation to the mayor and Village Council. Exhibit 4.

59. Andrea Ostrowski's report, dated December 9, 2014, advises that if Erwin were to be terminated, there needed to be a legitimate business justification for dismissal outside the fact that he had been arrested. It says that even though the employee manual (which Erwin never saw) does not require progressive discipline, the fact that he received no disciple should be a factor in the Council's decision. The Report concluded that no discipline was warranted and Erwin should remain a Village of Morrow employee. The report warned that the Council could open itself up to liability if a negative employment action were taken as the result of his arrest. Exhibit 5.

60. According to Steve Wagner, a former State auditor, and Kathy Kohler, Records Clerk for the Village, has stated that Plaintiff could not be terminated legally in the absence of a public hearing.

61. In approximately the third week of February, 2015, Plaintiff told Rod Smith, the Village Administrator, that he would be ready to return to work within a couple of weeks, and Rod Smith said that was fine.

62. Plaintiff, through its Administrator, Rod Smith, knew of Plaintiff's diagnosis and regarded him as being disabled.

63. Plaintiff nevertheless was able to resume his job functions in March 2015, and, thus, is a qualified individual for his job.

64. On March 10, 2015, the Village Council voted 3-2 to terminate Erwin. Erwin's brother, Michael Erwin, the mayor of the Village, and his brother, Terry Erwin, who also sat on the Village Council, recused themselves from the vote.

65. The Village Council's vote to terminate Erwin was the result of the Council members' regard that Erwin was disabled (as evidenced by the majority vote of voting members).

66. Defendant, the Village, through its Administrator Rod Smith, by letter dated March 11, 2016, informed Erwin that he had been terminated from his employment. A copy of the Village's termination letter is attached as Exhibit 6.

67. The reason for termination of employment given was that "[t]he Village is at a point where we must fill your position in order to carry out the work that we have pledged to our taxpayers."

68. The Village's termination letter was accompanied by a letter of recommendation from then Village Administrator Rod Smith. A copy of the recommendation letter is attached as Exhibit 7.

69. Rod Smith has stated in an affidavit dated June 22, 2016, that the termination was an inappropriate action by Council. The affidavit is attached as Exhibit 8

70. The recommendation letter constitutes proof that Erwin was able to perform his job functions notwithstanding his disability while on leave of absence approved by the Village Administrator.

71. The termination of Erwin's employment was the result of his disability or his employer's regarding him as disabled (42 U.S.C. § 12112(a)).

72. Defendant has failed to continue his employment after March 11, 2016.

73. In the past, the Village has allowed employees to return to work following an extended period of disability. As an example, Bruce Miller could have returned to work after a period of approximately two years on administrative leave for a heart condition if his doctor had cleared him to return to work.

74. Following his termination, Erwin lost his health insurance provided as a benefit through his employment with the Village and sought psychological care through his Veteran's Administration benefits and was treated by Dr. Christopher Meshot. Dr. Meshot agreed with Beata Bartler's PTSD diagnosis and has continued to treat Erwin on an approximately monthly basis.

# III. Causes of Action

## A. Disability (ADA) Erwin

75. Plaintiff, Erwin re-alleges paragraphs 1 through 74 the same as if fully rewritten herein.

76. The Defendant is in violation of the American with Disabilities Act (ADA).

77. Plaintiff, Erwin's, disability as stated herein has resulted in a physical or mental impairment that substantially limited one or more major life activities under the ADA.

78. Plaintiff, Erwin's disability was a motivating factor in the decision of the Village to terminate Erwin's employment.

79. The Village Council had the authority under Ohio Revised Code to make a decision to accommodate Erwin's disability by putting him on administrative leave and allowing him to return to work when he was able.

80. The Village nevertheless terminated Erwin's employment.

81. The Village under the direction and control of the Village Council and Village Administrator has various employees who have taken extended sick leave and/or administrative leave for health reasons and who have been permitted to return to work for the Village upon a showing that they are qualified to perform their essential job functions.

82. Plaintiff, Erwin was temporarily and/or permanently disabled and/or has been regarded by the Village to be disabled under the ADA.

83. Plaintiff, Erwin was and is a qualified individual able to perform the essential functions of his job with the Village.

84. The Village has violated the rights of the Erwin by terminating his employment when he was qualified to perform the functions of his job.

B. Age Discrimination, Age Discrimination in Employment Act

85. Plaintiff, Erwin re-alleges paragraphs 1 through 84 the same as if fully rewritten herein.

86. Erwin, is over the age of 40 and the action of the Defendant as stated herein have resulted in a violation of the ADEA.

87. Erwin's age is a contributing factor in the decision by the Village Council to terminate him.

C. Wrongful Termination in Violation of Public Policy

88. Plaintiff Erwin re-alleges paragraphs 1 through 87 the same as if fully rewritten here.

89. Ohio is an at-will employment state, but an exception exists for wrongful termination in violation of public policy.

90. Erwin's termination was motivated, in part, by a desire to retaliate against him for a perceived role he played in addressing public utilities fraud, for his associate on with his brother, the mayor of the Village, who was attempting to address public corruption in the Village, and for being the supervisor of a disgruntled former employee who blamed Erwin for his employment termination due to a health condition that prevented him from working.

91. In terminating Erwin's employment following a temporary disability (PTSD) that was directly caused by a two-year campaign of harassment, intimidation and stalking by a disgruntled former employee and former member of the Village Council, and violation of two civil protective orders protecting Plaintiff from the same, culminating in his false arrest as the result of false charges of menacing by the daughter of the stalker, the Village was condoning, supporting and furthering such actions and the adverse effects of the illegal actions against Erwin.

8

in his false arrest as the result of false charges of menacing by the daughter of the stalker, the Village was condoning, supporting and furthering such actions and the adverse effects of the illegal actions against Erwin.

92. Such actions of the Village Council were motivated, in part, by wrongful desire to retaliate against Erwin, in violation of clear public policy as manifested by state or federal statute, administrative regulation or common law.

93. The wrongful discharge employees under circumstances like those of Erwin's dismissal would put in jeopardy the public policy of supporting efforts to eliminate corruption.

94. Plaintiff's dismissal was motivated by conduct related to the public policy of supporting efforts to eliminate corruption.

95. Defendant had no legitimate business reason for discharging Erwin.

D.  Termination without Public Hearing

96. Plaintiff, Erwin, re-alleges paragraphs 1-95 as if they were re-written here.

97. It is the Plaintiffs belief that it is required for the Village to hold a public hearing before terminating a Village employee.

98. The Village failed to give Erwin prior notice oral or written notice of charges against him, an explanation of its evidence against him and an opportunity to respond.

99. The Village failed to hold a public hearing on the proposal to terminate Erwin's employment.

E.  Termination as Breach of Employee Manual/Employment Contract

100.    Plaintiff, Erwin, re-alleges paragraphs 1-98 as if they were re-written here.

101.    The Village has an employee manual. When he was hired, Erwin was required to sign a document acknowledging receipt of the employee manual. He never saw a copy of the manual.

102.    The terms of the employee manual, which Plaintiff could observe through the Village's implementation of the policies and procedures in the manual, provide for a hierarchy of types of discipline for unsatisfactory performance, starting with verbal warnings and ending in dismissal.

103.    The personnel policies and procedures of the Village as evidenced by the terms in the employee manual create an employment contract with Village employees such that they are not dismissed except as a disciplinary measure for poor performance.

104.    The Village, in never providing an employee with a copy of the employee manual, effectively waives any provision of the employee manual providing that it does not constitute an express or implied employment contract.

F. Estoppel

106.    Plaintiff's dismissal letter states that he was being terminated because the Village needed to fill his position for the good of the taxpayers – an apparent allusion to Erwin's being out on administrative leave.

107.    At the time of the Village Council vote, Erwin had informed the Village Administrator that he intended to return to work within a matter of a few weeks.

108.    The Village Administrator, Rod Smith, informed Erwin that he could return to work.

109.    The Village therefore is estopped from terminating Erwin's employment for the stated reason, i.e., that the Village needed to fill his position.

## IV.  DAMAGES

110.    The compensation of the Plaintiff Erwin during the last full year of his employment, based upon his years of age and years in the employment of Village, receiving an amounted to approximately $30,750.  In addition, the Plaintiff, Erwin received additional benefits as a member of P.E.R.S. retirement system whereby he was accumulating annual retirement benefits with contributions of ½ thereof by the Village.  He also received health insurance that was substantially paid for by the Village and life insurance of approximately [$40,000] that was paid for by the Village.

111.    The loss of Erwin's employment and resulting period of unemployment and under-employment, necessitated Erwin's early withdrawal of his PERS benefits in order to cover his housing costs and other necessities.

112.    Erwin's early withdrawal from PERS resulted in the loss of the Village's portion of contributions (i.e., one-half) and an early withdrawal penalty of approximately 10%.  Erwin's net benefits after subtracting the employer's contribution and payment of the early withdrawal penalty amounted to approximately $53,000.  Had he not made the early withdrawal, the balance in his account would then have been [$122,500].  He thus lost approximately [$53,000] due to the early withdrawal.

113.    Had Erwin continued to be employed by the Village for an additional 10 years at the 2014 income level, the Village's contributions (assuming a 7% contribution factor) to Erwin's PERS account would have amounted to [$215,250].

114.    In addition to the loss of benefits as specified in paragraphs 108-111 stated above, Erwin will incur additional economic losses and loss of benefits including but not limited to future fringe benefits that the Village provides for its employees.

115. Erwin paid $925 for the patient's portion of psychological services rendered by Hope Restored Counselling Services during the period from August 13, 2014 through March 24, 2015.

116. The termination of the employment of Erwin constitutes a wrongful discharge, the foreseeable consequences of which were exacerbated by the conduct of individual members of Council and former employee and member of Council with the apparent support of members of Council.

## G. Retaliation

117. The Defendant has engaged in retaliation in violation of the federal law under the EEOC and the Defendant is not allowed to fire, demote, harass or otherwise retaliate against an individual for filing a charge of discrimination or participating in discrimination proceedings or otherwise opposing discrimination.

118. Erwin has been discriminated against based on his disability and his age.

119. The Village has engaged in conduct that coerces, intimidates, threatens, harasses or interferes with the rights granted to the Plaintiff, Erwin, by the ADA, ADEA, and Federal and State law.

120. The actions of the Village have resulted in adverse action against Erwin, who, as a covered individual, is subject to be a protected activity under the ADA and the ADEA.

121. The actions of the Defendants are not based on reasonable, good faith belief and are not compliant with sound legal practice.

## H. Legal Fees

122. Plaintiff, Erwin has incurred legal fees and will continue to incur legal fees as the result of his wrongful discharge and retaliation for exercising his rights Federal law and is entitled to reasonable attorney fees.

## I. ADEA

123. The termination of the employment of the Erwin was in reckless disregard of the requirements of the ADEA.

124. The Village's termination of the employment of the Erwin among other illegal criteria was based on age and in violation of the ADEA and said violation was willful within the meaning of the ADEA.

## J. Mental Anguish and Distress

125.    Erwin's termination by the Village on the basis of his handicap has caused, and continues to cause, Erwin to feel humiliated, embarrassed and degraded and, as a consequence, Erwin has suffered and continues to suffer extreme mental anguish and emotional distress all to his damage.

126.    Erwin, as the result of the actions of the Village which has caused mental anguish and distress, have exacerbated Erwin's mental health condition that arose as the result of the stalking by Bruce Miller and false accusations leading to arrest by his daughter, Theresa Mitchell.

127.    Erwin's reaction to the Defendant's actions, including his discharge, was foreseeable and, therefore, the vote by the Village Council to terminate Erwin constitutes intentional infliction of emotional distress as well as wrongful discharge.

## Prayer for Relief

WHEREFORE, Plaintiff requests judgment against the Defendant and requests that this court:

1. Issue an order enjoining the Defendant from engaging in discriminatory conduct.
2. Issue an order requiring the Defendant to reinstate Erwin as a full-time employee in his previous position.
3. Grant Plaintiff an award of compensatory damages consisting of back wages and other benefits for which he would have been entitled had he been continuously employed in his position as a full-time employee with the Village for an additional period of twelve additional years.
4. Grant Plaintiff an award of damages in excess of $25,000 for the loss of retirement benefits through his employment with the Village and penalties, forfeitures and other costs of premature liquidation of Plaintiff's retirement benefits.
5. Grant Plaintiff an award of damages for mental anguish according to proof in excess of $25,000.
6. Grant Plaintiff an award of his attorney fees and costs of this action.
7. Grant Plaintiff an award of additional compensatory damages in excess of $25,000.
8. Grant Plaintiff an award of punitive damages in excess of $25,000.
9. Issue an order requiring Defendant to comply with section 501 of the rehabilitation act of 1973(29 USCA section 791) to take affirmative actions to ensure that Plaintiff has equal access to employment opportunities and promotion with the Village.
10. Find that Erwin is a handicapped person within the meaning of Federal Law including, but not limited to 29 CFR section 1630.2(g).
11. Determine that Plaintiff is and at all relevant times was qualified to fill his position with the Village and that the Defendant has discriminated against the Plaintiff on the basis of his handicap.

12. Grant judgment in favor of Plaintiff for the loss of his benefits, including but not limited to PERS retirement, health insurance, life insurance loss of sick pay, loss of vacation pay and loss of overtime.

13. Enter judgment requiring the Village to make Erwin whole by placing him in the position he would have occupied in the absence of discrimination by the Defendant, provide back pay with interest, and pay liquidated, compensatory, and punitive damages as the jury may assess.

14. Award such other legal and equitable relief as justice requires.

15. Provide for such other and further relief as the court may deem just and proper.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, OH 45040
(513) 398-1910
Fax (513) 398-0181
jim@WhitakerAttorneys.com

Carolyn A. Betts (0029077)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
Cabettslaw@zoomtown.com

## Jury Demand

Plaintiff's demand a trial by jury of the maximum number of jurors as provided by law.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, OH 45040
(513) 398-1910
Fax (513) 398-0181
jim@WhitakerAttorneys.com

Respectfully submitted,

Carolyn A. Betts (0029077)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
Cabettslaw@zoomtown.com

## Notice of lawsuit and request to waive service of summons

Plaintiffs have contemporaneously with the filing of this complaint served upon the Defendants notice of lawsuit and request to waive service of summons along with a waiver of service of summons.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, OH 45040
(513) 398-1910
Fax (513) 398-0181
jim@WhitakerAttorneys.com