**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Timothy Erwin, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:16-cv-1166 |
| | : | |
| vs. | : | Judge Michael R. Barrett |
| | : | |
| Village of Morrow, Ohio, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## OPINION & ORDER

This matter is before the Court on Defendant Village of Morrow's Motion for Summary Judgment (Doc. 61), Plaintiff Timothy Erwin's Motion for Summary Judgment (Doc. 62), Defendant's Motion to Strike Portions of Plaintiff's Affidavit (Doc. 66), and Plaintiff's Motion to Strike or Otherwise Disregard Defendant's Motion to Strike (Doc. 67). Each motion is fully briefed (Docs. 63, 64, 65, 67, 68, 69, 73), or the time to file a reply has passed,[1] and ripe for review.

## I. MOTIONS TO STRIKE

The Court will consider the parties' Motions to Strike first. *See Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions.").

A party moving for or opposing summary judgment may cite certain materials in

---

[1] Plaintiff did not reply to Defendant's Response to Plaintiff's Motion for Summary Judgment.

the record including "affidavits or declarations." FED. R. CIV. P. 56(c)(1)(A). A responding party, who believes that such cited materials "cannot be presented in a form that would be admissible in evidence," may file an objection. FED. R. CIV. P. 56(c)(2). "Motions to strike should be construed as objections under Rule 56(c)(2)" of the Federal Rules of Civil Procedure ("Rules"). *Smith v. Interim HealthCare of Cincinnati, Inc.*, No. 1:10-CV-582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011) ("[M]otions to strike are no longer appropriate under the 2010 amendments to Rule 56.") (citing *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)); *see Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 736-37 (S.D. Ohio 2017); *see also* FED. R. CIV. P. 56(c) (2010 Advisory Committee Notes) (explaining that the Rule 56(c)(2) objection "functions much as an objection for trial, adjusted for the pretrial setting . . . There is no need to make a separate motion to strike."). "If a party does file a separate motion to strike, the motion should be construed as an objection under Rule 56(c)(2)." *Stillwagon*, 274 F. Supp.3d at 737 (citing *Smith*, 2011 WL 6012971, at *4). Accordingly, the Court construes the parties' Motions to Strike as objections under Rule 56(c)(2).

Defendant objects to portions of Plaintiff's Affidavit and contends that there are four groups of paragraphs, or portions thereof, that the Court should disregard: those (1) not based on Plaintiff's personal knowledge; (2) based on citations to other witnesses' depositions, or exhibits to those depositions, and not based on his personal knowledge; (3) based on his interpretation of documents and not based on his personal knowledge; and (4) portions of paragraphs that contain hearsay. (Doc. 66). Plaintiff responds that Defendant's objections are untimely or, alternatively, asks the Court to disregard the objections. (Doc. 67).

## a. Timeliness

Plaintiff argues that Defendant waived its right to challenge Plaintiff's Affidavit, as too much time passed between the date on which Plaintiff filed his Affidavit and the date on which Defendant filed its objections. (Doc. 67 at PageID 1593) (citing *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) and *Davis v. Sears, Roebuck & Co.*, 708 F.2d 862 (1st Cir. 1983)). Plaintiff's reliance on *Wiley* and *Davis* is misplaced as, unlike the moving— *i.e.*, objecting—parties in those cases, Defendant objected *before* the Court ruled on the Motions for Summary Judgment. Moreover, even assuming that Defendant's objections are untimely, the Court is not convinced that Defendant fails to show good cause to file the objections.[2] *See* S.D. Ohio Civ. R. 7.2(a)(2); (June 4, 2018 Minute Entry for Proceedings setting the dispositive motion deadline); (Doc. 67, Plaintiff's assertion that Defendant's objections are is 38-days late); (Doc. 68, Defendant's concession that it filed objections two days after the dispositive motion briefing deadlines closed). Defendant's filing of its objections two days after the dispositive motions briefing deadlines closed, and well-before the Court considered the Motions for Summary Judgment, along with Defendant's Response establishes good cause pursuant to S.D. Ohio Civ. R. 7.2(a)(2). The Court will proceed to the merits of the objections.

## b. Merits

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P.

---

[2] Plaintiff contends that Defendant has neither sought leave nor an extension of time to file the objections. (Doc. 67 at PageID 1593). Defendant's Response (Doc. 68 at PageID 1600) sufficiently satisfies its responsibility to seek leave or an extension of time under S.D. Ohio Civ. R. 7.2(a)(2).

56(c)(4). "An affidavit that does not satisfy these requirements . . . will not be considered by the Court in ruling upon a motion for summary judgment." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (citing *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000)). However, "the Court must only strike the inadmissible portions of an affidavit, rather than the whole affidavit." *Wilson v. Budco*, 762 F.Supp.2d 1047, 1057 (E.D. Mich. 2011).

Although personal knowledge may be inferred from the content of the statements, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56(c)(2) (2010 Advisory Committee Notes); *see Reddy*, 137 F. Supp. 2d at 954 (citing 11 James Wm. Moore et al*., Moore's Federal Practice* § 56.14[1][c] (3d ed. 1999)). Moreover, inferences, thoughts and opinions must be based on first hand observations or personal experience, substantiated by specific facts. *See Harrah's Entertainment, Inc. v. Ace American Ins. Co.*, 100 Fed.Appx. 387, 394 (6th Cir. 2004). The Court cannot consider hearsay evidence on a motion for summary judgment. *Id.*

Starting with the paragraphs that Defendant contends are not based on Plaintiff's personal knowledge—paragraphs 14, 18, 20, 33, 40, 46, 51, 52, 53, 54, 57, 60, 67, 68, and 72—Plaintiff fails, entirely, to acknowledge Defendant's objections regarding paragraphs 20, 33, 60, 67, and 72, and the Court will not infer personal knowledge for purposes of his Affidavit. *Compare* (Doc. 66 at PageID 1588-89), *with* (Docs. 67, 73). Although Plaintiff appears to acknowledge Defendant's objections to paragraphs 52, 53, 54, and 68 (Doc. 67 at PageID 1594), he does not address the objections with specific facts and the Court will not shoulder his burden and infer personal knowledge for

purposes of his Affidavit.

Regarding paragraphs 14, 18, and 51, Plaintiff responds, summarily, that he has personal knowledge of the information in these paragraphs because he has personal knowledge of the information in those paragraphs. (Doc. 67 at PageID 1595); (Doc. 73 at PageID 1628). He fails to lay foundation for his asserted knowledge and the Court will not infer such knowledge for purposes of his Affidavit. Regarding paragraph 40, he concedes that he did not attend Defendant's Village Council's March 10, 2015 Executive Session and explains that his knowledge of the information in this paragraph comes from the contents of his termination letter. (Doc. 67 at PageID 1595). The Court agrees that the information goes beyond Plaintiff's personal knowledge and into an unsubstantiated inference (Doc. 68 at PageID 1601) and will not infer such personal knowledge for purposes of his Affidavit. Regarding paragraph 57, he asserts that his knowledge of the information therein comes from past experiences. (Doc. 67 at PageID at 1595). However, the Court, agrees with Defendant (Doc. 68 at PageID 1602) and finds that the information in this paragraph goes beyond Plaintiff's personal knowledge and into an unsubstantiated inference and will not infer personal knowledge for purposes of his Affidavit.

Regarding paragraph 46, the Court finds that Plaintiff has personal knowledge of his amount of accrued sick leave, but that the remainder of his statements therein are unsubstantiated inferences and will not consider those portions of that paragraph for purposes of his Affidavit. In light of the above regarding Defendant's first group of objections, Defendant's objections to paragraphs 14, 18, 20, 33, 40, 46, 51, 52, 53, 54, 57, 60, 67, 68, and 72 in Plaintiff's Affidavit are **SUSTAINED**.

Turning to those paragraphs that Defendant contends are based on citations to

other witnesses' depositions, or exhibits to those depositions, and not based on Plaintiff's personal knowledge—paragraphs 7, 13, 15, 17, 28, 31, 32, 34, 44, 55, 56, 58, 59, 61, 69, and 70—Plaintiff fails, entirely, to acknowledge Defendant's objections regarding paragraphs 7, 13, 15, 17, and 70 (Docs. 67, 73) and appears to acknowledge that Defendant objects to paragraphs 28, 31, 55, and 69 (Doc. 67 at PageID 1593), but does not separately address Defendant's objections regarding those paragraphs. Regarding the remaining paragraphs, Plaintiff argues that, as he "would have been permitted to cite such documents directly to support his brief, there is no harm in the references appearing in Plaintiff's Affidavit instead of in Plaintiff's Motion for Summary Judgment." (*Id.* at PageID 1594).

As Plaintiff relies on, and cites, others' deposition testimony and an exhibit thereto, the Court sees no need to strike these paragraphs of Plaintiff's Affidavit. However, the Court will only give these paragraphs consideration which they may be entitled to under Rule 56. *See Wachenschwanz v. Dolgencorp, LLC*, No. 2:12-CV-1037, 2014 WL 907249, at *5 (S.D. Ohio Mar. 7, 2014) ("[T]he Court is empowered to review those portions of Plaintiff's Declaration that have been retained, and base its judgments only upon evidence that is properly considered under Fed. R. Civ. P. 56."). Thus, Defendant's objections to paragraphs 7, 13, 15, 17, 28, 31, 32, 34, 44, 55, 56, 58, 59, 61, 69, and 70 are **OVERRULED**.

Moving to paragraphs 8 and 71, which Defendant asserts are based on Plaintiff's interpretation of documents—namely, sections of what appears to be Defendant's Employment Manual and the Ohio Ethics Commission Restrictions on Nepotism or Hiring of Family Member—and not his personal knowledge, Plaintiff responds that he has

personal knowledge of the contents of those documents because he has read them and does not respond to Defendant's argument that Plaintiff's statements are based on impermissible interpretations. *Compare* (Doc. 66 at PageID 1589), *with* (Doc. 67 at PageID 1594). The Court agrees that paragraphs 7 and 81 contain Plaintiff's interpretations of what Defendant's employment policies require or what violates the Ohio Ethics Commission Restrictions on Nepotism or Hiring of Family Members and he fails to provide specific factual evidence to substantiate his interpretations. Thus, Defendant's objections to paragraphs 7 and 81 are **SUSTAINED**.

Turning to the portions of paragraphs 11, 37, and 48 that Defendant argues contain inadmissible hearsay, Plaintiff neither contests that those portions qualify as hearsay nor provides an exception to the hearsay rule. Rather, he appears to concede that his statements are hearsay and asks the Court to not strike the remaining portions of those paragraphs. *Compare* (Doc. 66 at PageID 1589), *with* (Doc. 1595). As the Court cannot consider hearsay on a motion for summary judgment and Plaintiff does not contest Defendant's objections that the challenged portions of paragraphs 11, 37, and 48 are hearsay, Defendant's objections to those portions of those paragraphs are **SUSTAINED**.

Finally, the Court disagrees that the above rulings should only apply to the consideration of Plaintiff's Motion for Summary Judgment and not to the consideration of Plaintiff's Response to Defendant's Motion for Summary Judgment. *See* (Doc. 67 at PageID 1596).

## II. BACKGROUND[3]

Plaintiff had a full-time, general maintenance position in Defendant's Public Works Department from sometime in 2005 until his termination on March 11, 2015. (Doc. 26 at PageID 249-50); (Doc. 60, ¶ 2, at PageID 1453). In December 2016, he filed the current lawsuit alleging: (1) termination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); (2) termination in violation of the Americans with Disability Act ("ADA"); (3) wrongful termination in violation of public policy; (4) termination in violation of an employment contract; (5) termination without a public hearing; (6) estoppel; (7) retaliation; and (8) intentional infliction of emotional distress. (Doc. 3 at PageID 9-14). He seeks compensatory and punitive damages and an award of legal and attorney fees. (*Id.*).

Defendant moves for summary judgment on all of Plaintiff's claims. (Doc. 61 at PageID 1470). Plaintiff moves for summary judgment as to his ADEA, ADA, and wrongful discharge in violation of public policy claims. (Doc. 62 at PageID 1504).

### a. Undisputed Facts

Defendant has two full-time, general maintenance positions in its Public Works Department. (Doc. 28 at PageID 652-53); (Doc. 46, p. 14). Plaintiff's duties comprised mostly of maintenance work including mowing and landscaping public land, trash removal, salting streets and removing snow in the winter, basic water testing, assisting with water leaks, and vehicle maintenance. (Doc. 26 at PageID 249); (Doc. 60, ¶ 3, 4, at PageID 1453).

---

[3] Plaintiff did not include a Statement of Facts in his Motion for Summary Judgment. Moreover, his citations—in his Motion for Summary Judgment, Response to Defendant's Motion for Summary Judgment, and Affidavit—to various parts of the materials in the record are inconsistent, confusing, and, at times, incomplete. The Court reminds Plaintiff that, in ruling on a motion for summary judgment, *"[t]he Court need only consider the cited materials*, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3) (emphasis added).

William Thompson, a resident of Defendant, served on Defendant's Village Council from 2011 to, at least, 2017. (Doc. 28 at PageID 632). Michael Erwin, Plaintiff's brother, served as Defendant's Mayor from approximately 2011 to 2015, including at the time of Plaintiff's termination. *See* (Doc. 3 at PageID 6). Terry Erwin, Plaintiff's brother, served on Defendant's Village Council from approximately 2011 to 2015, including at the time of Plaintiff's termination. *See* (*id.* at PageID 8). Yorkie Bryant served on Defendant's Village Council when Plaintiff was terminated and is Defendant's Current Mayor. (Doc. 61 at PageID 1479, n.6).

In October 2012, Plaintiff filed for a five-year civil stalking protective order against Bruce Miller, Plaintiff's former co-worker in Defendant's Public Works Department and a resident of Defendant, which a Warren County, Ohio, Court granted in February 2013. (Doc. 26 at PageID 251, 264-65, 309). Separately, sometime in 2012, after receiving notice of a water leak on Bob Miller's, Defendant's former Zoning Inspector and Bruce Miller's brother, land, Plaintiff reported that "Bob wouldn't let me turn his water off and there's no water meter to [Bob Miller's] place" to his then direct-supervisor. (*Id.* at PageID 255-57). After a subsequent incident involving a Warren County street revision project, broken water tap, and investigation, Defendant terminated Bob Miller from his Zoning Inspector position and Mr. Miller was charged with stealing a public utility. (*Id.* at PageID 256-58, 261).

On July 7, 2014, Bruce Miller was arrested for violating the civil stalking protective order Plaintiff had against him. (Doc. 60, ¶ 19, at PageID 1455). On July 15, 2014, the police received a complaint from Theresa Mitchell, Bruce Miller's daughter, stating that Plaintiff "blocked her in at Subway and threatened her." (Doc. 26 at PageID 271, 275).

Subsequently, the police arrested Plaintiff and took him to the Warren County jail where he remained for several hours. (*Id.* at PageID 276). Plaintiff was charged with menacing Theresa Mitchell. (*Id.*, Attachment 3, Def. Exhibit ("Ex.") C, PageID 363).

On July 16, 2014, Rodney Smith, Defendant's Village Administrator from July 2012 to February 2016 and Plaintiff's direct supervisor, placed Plaintiff on administrative leave while Defendant investigated the Theresa Mitchell incident and pending criminal charges against Plaintiff. (Doc. 26 at PageID 276-79); (Doc. 46, p. 10-11). Plaintiff's brothers, Mayor Erwin and Village Councilman Erwin, recused themselves from Defendant's investigation and Mr. Smith handled the situation without their input. (Doc. 28, Attachment 1, Ex. 10 at PageID 760). On August 13, 2014, Plaintiff began mental health counseling with Beata Bartler. (Doc. 54 at PageID 1248). During his treatment, Ms. Bartler diagnosed him with post-traumatic stress disorder ("PTSD") and he informed Mr. Smith of this diagnosis. (Doc. 26 at PageID 279, 282). Plaintiff attributes "being incarcerated, that incident" as having "a lot to do with" his PTSD (*Id.* at PageID 286) and states that his "PTSD resulted from a false arrest by reason of a false police report filed by Theresa Mitchell" (Doc. 60, ¶ 10, at PageID 1454).

On September 23, 2014, the charges against Plaintiff related to Theresa Mitchell were dropped. (Doc. 26 at PageID 278). On September 24, 2014, Ms. Bartler wrote a letter, "[t]o whom it may concern," stating that Plaintiff had been receiving counseling from her since August 13, 2014, at which time he "presented with high emotional distress, anxiety, fear, and depression" in addition to self-reporting symptoms of "difficulty sleeping, hypervigilance and intrusive thoughts related to his recent work-related experiences." (Doc. 26, Attachment 3, Def. Ex. A, PageID 360). Ms. Bartler noted that "[d]ue to the

circumstances involved in [Plaintiff]'s traumatic experience, the continuing threat to and fear for [his] safety, and because of the intensity of psychological and emotional response, it is recommended for this client to not return to his regular employment at this time. [His] functioning will continue to be evaluated in his treatment." (*Id.*).

Also after the charges against Plaintiff were dropped, Plaintiff and Mr. Smith discussed Plaintiff taking "additional time off because of" Plaintiff's PTSD (Doc. 26 at PageID 279) and, on September 24, 2014, Mr. Smith wrote a letter to Defendant's Mayor, Vice Mayor, and Village Council informing them that the charges against Plaintiff had been dropped and "[a]s a result, [Plaintiff] is no longer on paid administrative leave and is free to return to work" but, that "based on correspondence received from his medical provider, [Plaintiff] will be on sick leave until further notice." (Doc. 28, Attachment 1, Ex. 10 at PageID 760).

On October 28, 2014, Defendant and the Ostrowski Law Firm Co., L.P.A., via attorney Andrea Ostrowski, entered into a Memorandum of Agreement ("MOA") for Defendant to hire Ms. Ostrowski to conduct an independent investigation into Plaintiff's "Recent Behavior and Employment." (Doc. 46, Attachment 1 at PageID 1120-21). The MOA limited the scope of the agreement to Plaintiff's "employment, specifically what, if any, action should be taken with regards to [his] employment as a result of recent incidents that have been reported to the Mayor and Village Council" *i.e.*, the Theresa Michell incident. (*Id.* at PageID 1120). On December 9, 2014, Ms. Ostrowski provided a final report to Defendant's Mayor and Village Council. (Doc. 26, Attachment 3, Def. Ex. C, PageID 362-66). She concluded that she "d[id] not believe the situation warrants termination and should Council take a negative employment action against [Plaintiff] for

being arrested, Council will open the Village to potential liability." (*Id.* at PageID 366). Plaintiff acknowledges that Defendant "did not take any action against [him] for being arrested." (*Id.* at PageID 338).

Mr. Smith did not share any communication that he received from Plaintiff's counselor with Defendant's Village Council and "wasn't specific with" Village Council regarding Plaintiff's PTSD counseling or treatment in 2014 and 2015. (Doc. 28 at PageID 650). Moreover, during the period between July 16, 2014 and March 10, 2015, "Mr. Smith hired contractors to do some of [Plaintiff]'s work" (Doc. 28 at PageID 639) and Mr. Smith and Defendant's Chief of Police assisted the remaining general Public Works Department employee in ensuring the Department's needs were satisfied. (Doc. 46, p. 47-48).

On March 10, 2015, Defendant held a monthly Village Council meeting. (Doc. 28, Attachment 1, Ex. 11 at PageID 761-63). The Village Council members in attendance were: York Bryant, Terry Erwin, Rebecca Isaacs-Niemesh, Judy Neal, John Poe, and William Thompson. (*Id.* at PageID 761). During that meeting, Village Council entered into an Executive Session during which they discussed "personnel issues" including Plaintiff's employment. (Doc. 28 at PageID 633); (Doc. 28, Attachment 1, Ex. 11 at PageID 761). Mr. Smith was present for the Executive Session and Mayor Erwin and Village Councilman Erwin did not participate in the Executive Session. (Doc. 46, p. 76). Unlike the regular sessions of Village Council, Executive Sessions are closed to the public and Village Council does not take minutes of or recordings in such sessions. (Doc. 28 at PageID 664).

Plaintiff received a March 11, 2015, letter from Mr. Smith titled "Re: Notice of Termination of Employment." (Doc. 26 at PageID 302); (*Id.*, Attachment 3, Def. Ex. B,

PageID 361).  That letter stated:

> At the direction of Morrow Village Council, I am writing to notify you that your employment with the Village of Morrow has been terminated, effective immediately.  The Village is at a point where we must fill your position in order to carry out the work that we have pledged to our taxpayers.
>
> Enclosed is your final check, totaling $4,034.41, paying you the balance of your accumulated sick pay (279.75 hours) from the date of your last paycheck, March 4, 2015, plus your vacation balance for 2015 (120.00 hours).  All of this is based on your final rate of pay at $14.26 per hour.  Additionally, I am enclosing a letter of recommendation for your use in seeking future employment.

(*Id.*); (Doc. 59, Attachment 10, Ex. 8 at PageID 1426).  In the attached letter of recommendation, Mr. Smith stated, among other things, that he "would not hesitate" to offer Plaintiff his "highest and most unreserved recommendation."  (Doc. 46, Attachment 1 at PageID 1114).

Plaintiff "was never advised . . . that [Defendant] had reached a point that it needed to fill [his] position in order to carry out the public service work that [Defendant] had pledged to its taxpayers."  (Doc. 60, ¶ 43 at PageID 1457).  Plaintiff had to return approximately $3,200.00 of his final check, the total of his accumulated sick pay balance, to the Ohio Attorney General's office, as that office stated it was improperly paid.  (*Id.* at ¶ 65, 66 at PageID 1459).

Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC") in which he stated his belief that he had been discriminated against because of his age and disability in violation of the ADEA and ADA.  (Doc. 3, Attachment 2, Ex. 1).  Mr. Smith signed an affidavit in connection with Plaintiff's EEOC grievance.  (Doc. 28, Attachment 1, Ex. 3 at PageID 724-25).  On September 28, 2016, the EEOC issued Plaintiff a right to sue letter.  (Doc. 3, Attachment 3, Ex. 2).  Plaintiff was 57 years old at

the time he filed his Complaint.  (Doc. 3 at PageID 4).

### b. Factual Dispute

The parties dispute who decided to and who terminated Plaintiff.  Plaintiff argues that Defendant's Village Council decided to terminate him.  He relies on Mr. Smith's EEOC affidavit which states that, "[a]t a council meeting on or about March 10, 2015, I was instructed to terminate [Plaintiff] as an employee of the Village of Morrow."  (Doc. 28, Attachment 1, Ex. 3 at PageID 725).  Plaintiff also relies on Mr. Smith's deposition testimony that he prepared Plaintiff's termination letter "the day after Council had met and [the letter] is what I believe I was instructed to do" *i.e.*, that when Village Council "came out of executive session it was my belief that this is what I was instructed to do is to let [Plaintiff] go and to make sure that he got his pay out of whatever vacation and sick pay that he had."  (Doc. 46, p. 51-52).  Mr. Smith testified that it was not his decision to terminate Plaintiff. (*Id.*).

Defendant asserts that Village Council did not have the authority to terminate Plaintiff and Mr. Smith terminated Plaintiff.  (Doc. 61 at PageID 1474-75).  It relies on Mr. Thompson's statements that Mr. Smith "was not ordered or directed by [Village] council. He only took direction from the mayor" (Doc. 28 at PageID 635) and that it "would be a lie" to state that Mr. Smith terminated Plaintiff "because of directions from council" (*id.* at PageID 640).  Mr. Thompson testified that "Council members have no authority to terminate a Village employee except the Village administrator by a vote of five out of six." (Doc. 28 at PageID 633). Defendant asserts that Mr. "Smith, alone, as Village Administrator, possessed and exercised his authority to terminate Plaintiff's employment with the Village."  (Doc. 61 at PageID 1475).

14

Regardless of the dispute, Mr. Smith, in his capacity as Defendant's Village Administrator, speaks for Defendant. In Ohio, a village administrator is vested with the powers provided under Ohio Revised Code § 735.273 which, in turn, grants a village administrator the power to, among other things, "appoint officers, employees, agents, clerks, and assistants, provided such positions are first authorized by the legislative authority of the village." Ohio Rev. Code §§ 735.271, 735.273; *see In re Anslinger*, No. CA 5632, 1978 WL 216189, at *3 (Ohio Ct. App. Aug. 4, 1978) (describing the role of village administrators in Ohio). As Defendant asserts, "these provisions do not expressly grant a village administrator the power to [] remove its employees," but that "the power to appoint without interference also implies the power to discharge." (Doc. 61 at PageID 1474-75).

Defendant cites, on numerous occasions, Plaintiff's testimony that he believes he "was terminated because some of the council members that terminated me are good friends with Bruce Miller, Bob[] Miller, Yorkie Bryant and I - - I think a lot of it was because of the fact that they had some issues that they wanted to get rid of me" and Mr. Smith's testimony that certain Village Council members "would like to see [Plaintiff] dismissed." (Doc. 26 at PageID 307); (Doc. 46, p. 32).

### III. ANALYSIS

### a. Standard of Review

Pursuant to Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The standards upon which courts evaluate motions for summary judgment do not change when the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### b. Age Discrimination in Employment Act

The ADEA protects "individuals who are at least 40 years of age" and prohibits an employer from discharging any individual "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff may establish age discrimination under the ADEA either by direct or by circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). The Sixth Circuit analyzes ADEA claims based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework and, to establish a prima facie case of age discrimination, the plaintiff must show that he (1) was over 40 years old; (2) suffered an adverse employment action; (3) was qualified for the position he held; and (4) was replaced by a person outside the protected class. *Id.* at 622-23; *see McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff sets forth a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory basis for the termination. *Id.* If the defendant carries that burden, the plaintiff can survive summary judgment by demonstrating pretext. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 493 (6th Cir. 2010).

"To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). "*Gross* clarified that the burden of persuasion does not shift to the employer in an ADEA case, 'even when a plaintiff has produced some evidence that age was one motivating factor in that decision.'" *Scheick*, 766 F.3d at 529 (quoting *Gross*, 557 U.S. at 180); *see Geiger*, 579 F.3d at 621 (explaining that "*Gross* overrules our ADEA precedent to the extent that cases applied Title VII's burden-shifting framework if the plaintiff produced direct evidence of age discrimination."). However, the "application of the *McDonnell Douglas* evidentiary framework to prove ADEA claims based on circumstantial evidence remains consistent with *Gross*" and "nothing in *Gross* undermines the principle that '[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.'" *Scheick*, 766 F.3d at 529 (citing *Kline v. TVA*, 128 F.3d 337, 348-49 (6th Cir. 1997)).

### i. Prima Facie Case

Plaintiff does not present direct evidence of age discrimination. Consequently, the Court will analyze his ADEA claim under the *McDonnell Douglas* framework and notes that his burden at the prima facie case stage is relatively light. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002).

Plaintiff satisfies the first two elements, as he was over 40 years old at the date of his termination and his termination constitutes an adverse employment action. Turning to the third element, "to be considered qualified, 'an employee must demonstrate that he . . . was meeting the employer's legitimate expectations and was performing to the employer's satisfaction.'" *Most v. BWXT Nuclear Operations Grp., Inc.*, 743 F. App'x 664, 668 (6th Cir. 2018) (quoting *Gunthorpe v. DaimlerChrysler Corp.*, 90 F. App'x 877, 880 (6th Cir. 2004)). "A court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002); *see Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir.2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage . . . a court must examine plaintiffs' evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."). Stated otherwise, "a court must be careful not to conflate the distinct stages of the *McDonnell Douglas* test." *Cicero*, 280 F.3d at 585.

Plaintiff worked in his position for 10 years prior to his termination. (Doc. 26 at PageID 249-50); (Doc. 60, ¶ 2, at PageID 1453). His direct supervisor stated that Plaintiff "was always prompt, efficient, courteous and professional to both staff and public" (Doc.

28, Attachment 1, Ex. 3 at PageID 724) and was "among the most skilled and detailed oriented workers" that his supervisor had ever worked with (Doc. 46, Attachment 1, Ex. 2 at PageID 1114). Aside from Plaintiff's use of sick leave from September 2014 through March 2015, due to his PTSD diagnosis and treatment, there is no record evidence suggesting that Plaintiff was unable to maintain Defendant's parks, streets, basic water system testing, or vehicles or was otherwise unqualified for his general maintenance position; rather, the evidence establishes that Plaintiff's job performance was satisfactory. To the extent that Defendant argues that Plaintiff was not qualified because he failed to return after six months of leave and his counselor noted that his PTSD symptoms continue to cause clinically significant distress and interfere with his daily functioning into March 2015 (Doc. 61 at PageID 1481-82), Defendant conflates Plaintiff's evidence presented regarding his qualifications for his job with its proffered nondiscriminatory reason for his termination. *See e.g.*, *Cline*, 206 F.3d at 660-61.

Turning to the fourth element, a plaintiff must show circumstances that support an inference of age discrimination. *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012). An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant and, in the Sixth Circuit, a difference of more than six years is considered substantial. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336, 340 (6th Cir. 2003). Plaintiff contends that Mike Bryant, Yorkie Bryant's son, replaced him and that Mike Bryant is in his early forties. (Doc. 26 at PageID 318); (Doc. 62 at PageID 1520). Defendant explains that it hired Gary Johnson, who was 44 years old at the time of his hiring, to work with Mike Hanna, who was 61 years old at the time of Plaintiff's termination, shortly after Plaintiff was terminated,

in order for Gary "to basically learn the ropes" for a month before Mike Hanna resigned to take a job in a different town. (Doc. 26 at PageID 317); (Doc. 28 at PageID 662-63, 698); (Doc. 46, p. 14-15). Defendant maintains that Gary replaced Mike Hanna and did not replace Plaintiff. (Doc. 61 at PageID 1483). Defendant explains that Gary was the only employee in its Public Works Department after Mike Hanna left, Gary resigned within a year to take job in a different town, and, when Gary resigned, Mike Hanna returned to his former job with Defendant. (*Id.*) (citing (Doc. 28 at PageID 651, 654)). Defendant maintains that Mike Hanna replaced Gary and, thus presumably, did not fill Plaintiff's position. (*Id.*). Defendant acknowledges that it "was eventually able to fill the other open position in the department with Mike Bryant sometime after February 2016" (*Id.* at PageID 1484) and he held "substantially the same position that [Plaintiff] had previously held" (Doc. 28 at PageID 652).

Although it is not entirely clear who replaced Plaintiff—Gary Johnson or Mike Bryant—regardless of which man replaced him, there appears to be a more than six-year age difference between Plaintiff and either man which satisfies Plaintiff's burden in demonstrating the fourth prong of his age discrimination claim prima facie case. *See Grosjean*, 349 F.3d at 336, 340. Plaintiff meets his burden at the prima facie case stage.

### ii. Legitimate, nondiscriminatory reason for Plaintiff's termination

Once the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action, the defendant need not "persuade the court that it was actually motivated by the proffered reason[]" but must "raise a genuine issue of fact." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814-15 (6th Cir. 2011). Defendant contends that it terminated Plaintiff because it "reached a point where it had

to fill [his] position (due to his extended leave of absence) in order to carry out the work it pledged to its taxpayers and there was no end to Plaintiff's leave ever articulated to [it]." (Doc. 61 at PageID 1484); *see* (Doc. 59, Attachment 10, Ex. 8 at PageID 1426). For support, Defendant explains that, during the period between July 16, 2014 and March 10, 2015, Mr. Smith had to hire contractors to do portions of Plaintiff's work at times (Doc. 28 at PageID 639) and Mr. Smith and Defendant's Chief of Police often had to assist the remaining general Public Works Department employee with that Department's responsibilities, in addition to fulfilling their own job responsibilities (Doc. 46, p. 47-48). Mr. Smith testified that Defendant "definitely needed two people in the Public Works Department." (*Id.*). Defendant meets its burden of producing a legitimate, nondiscriminatory reason for Plaintiff's termination.

### iii. Pretext

Once the burden shifts back to the plaintiff, he must show that the proffered reason is mere pretext for age discrimination. *See Spengler*, 615 F.3d at 493. To survive summary judgment, the plaintiff must "produce[] evidence from which a jury could reasonably doubt the employer's explanation. If so, h[is] prima facie case is sufficient to support an inference of discrimination at trial." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). A plaintiff can establish pretext by demonstrating that (1) the defendant's stated reason for termination has no basis in fact; (2) the reason offered for termination was not the actual reason; or (3) the reason offered was insufficient to explain the defendant's action. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). "The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are

factually false." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (internal citations omitted). This inquiry is a commonsense one: "did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400, n.4).

Here, under the first type of showing, Plaintiff contends that Defendant's stated reason is pretext because he told Mr. Smith he wanted to return sometime in early to mid-March 2015 and the Village "got along with a single individual in Plaintiff's job category for the better part of a year." (Doc. 62 at PageID 1521).

Regarding his contention that he told Mr. Smith that he wanted to return before his March 11, 2015 termination—it is clear that he faults Defendant for failing to ask him for a specific date on which he would be able to a return to work and Defendant faults him for failing to give it an exact date on which he was able and planned to return to work— Plaintiff "was never informed that [he] needed 'clearance' or any other action by his counselor in order to return to work." (Doc. 60, ¶ 37, at PageID 1456). Defendant has not provided any information regarding a policy that required Plaintiff to inform Defendant of his intention to return to work on a specific date. Village Council did not ask him when he planned to return to work but, sometime in February 2015, he called Mr. Smith and informed Mr. Smith that he "wanted to return to work by approximately the middle of March 2015" or "the first couple weeks of March." (Doc. 60, ¶ 38, 39, at PageID 1456); (Doc. 26 at PageID 297).

Mr. Smith confirms that, in the approximately six weeks before Plaintiff's termination, Plaintiff related that he would like to return to work sooner rather than later but, when Mr. Smith spoke to Plaintiff's counselor, "she indicated that it was not – it was

going to be further out than what [Plaintiff] wanted to come back." (Doc. 46, p. 45-46). Mr. Smith testified that the medical information he received from Plaintiff "was pretty much identical to the information [he] received from his health care provider, with the exception of [Plaintiff] wanting to come back to work sooner than later. And the health care provider said it was likely going to be later." (Doc. 46, p. 56). However, when asked whether "[a]s far as returning to work and suffering with PTSD is this something that the client pretty much has to decide" Plaintiff's counselor responded, "[u]ltimately, yes." (Doc. 54 at PageID 1280). Plaintiff acknowledges, though, that he did not tell Mr. Smith an exact date on which he wanted to return. (Doc. 26 at PageID 319-20).

Regarding Plaintiff's assertion that Defendant "got along with a single individual in Plaintiff's job category for the better part of a year," the Court will not reiterate Defendant's Public Works Department hiring timetable between Plaintiff's March 2015 termination and Mike Bryant's February 2016 hiring, but will note that Defendant had two employees for about a month, in April or May 2015 and when Gary Johnson and Mike Hanna worked together after Plaintiff's termination, and then not again until Defendant hired Mike Bryant in February 2016. (Doc. 61 at PageID 1483-84). Defendant states Gary replaced Mike Hanna and then Mike Hanna replaced Gary. (*Id.*). Thus, Defendant appears to have left Plaintiff's position open and did not have two full-time, general maintenance employees in its Public Works Department until it hired Mike Bryant in February 2016 (Doc. 61 at PageID 1483-84), despite its proffered reason that it terminated Plaintiff because it had to fill his position to carry out the work that it pledged to its taxpayers (Doc. 59, Attachment 10, Ex. 8 at PageID 1426).

Having reviewed this evidence, the Court finds that Plaintiff has presented

sufficient evidence of genuinely disputed material fact such that a jury could doubt Defendant's stated reasons for Plaintiff's termination.  Accordingly, both parties' Motions for Summary Judgment on this claim are denied.

### c. Americans with Disability Act

The ADA, as amended by the Amendments Act of 2008, makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

A plaintiff can prove a claim for discrimination based on wrongful termination under the ADA through direct or circumstantial evidence.  *Ferrari v. Ford Motor Company*, 826 F.3d 885, 891 (6th Cir. 2016).  When analyzing an ADA discrimination claim based on circumstantial evidence, courts in the Sixth Circuit use an adapted version of *McDonnell Douglas* burden-shifting framework.  *Id.* at 891-92 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1179-82 (6th Cir. 1996)).  Specifically, in such circumstances, a plaintiff must show that he (1) is disabled; (2) is otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari*, 826 F.3d at 891-92, 894;[4] *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir.

---

[4] "To *recover* on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability."  *Ferrari*, 826 F.3d at 891 (citing *Monette*, 90 F.3d at 1178) (emphasis added).  In *Ferrari*, the Sixth Circuit emphasized "that using the three-element test for the indirect [circumstantial evidence] method would make[] little sense, as its third element—whether the employee was, in fact, discharged because of disability—requires at the prima facie stage what the *McDonnell Douglas* burden-shifting framework seeks to uncover only through two

2011).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.  *Ferrari*, 826 F.3d at 892 (citing *Monette*, 90 F.3d at 1186).  If the defendant does so, the burden shifts to the plaintiff to show that the proffered reason is merely pretext.  *Id.*

### i. Prima Facie Case

Although Plaintiff appears to analyze his ADA claim as though he has presented direct evidence of discrimination (Doc. 62 at PageID 1506), he has not and the Court will analyze this claim under the five-element test described above.  Defendant asserts that Plaintiff cannot establish a prima facie case because he cannot show he was qualified for his job or suffered an adverse employment action.  (Doc. 61 at PageID 1499-1502).  Defendant does not dispute that Plaintiff meets the first element—or Plaintiff's assertion that he is disabled in light of his PTSD diagnosis—or the fourth and fifth elements.  *See* (*id.*).  The Court deems those three elements to be conceded.  *See e.g.*, *Spencer v. Nat'l City Bank*, 732 F. Supp. 2d 778, 789 (S.D. Ohio 2010)).  The Court reiterates that "[e]stablishing a prima facie case of discrimination under the indirect method is 'not onerous.'"  *Ferrari*, 826 F.3d at 894 (quoting *Cline*, 206 F.3d at 660).

Starting with element two, the ADA defines a "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds."  42 U.S.C. § 12111(8).  The ADA defines "reasonable accommodation" as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, and acquisition or modification of

---

additional burden shifts, thereby rendering that framework wholly unnecessary."  *Ferrari*, 826 F.3d at 894, n.4 (internal citations omitted).  The three-part test "is not used in the context of establishing a prima facie case[] for purposes of *McDonell Douglas*, but is rather in the context of what is required for *recovery* under the ADA."  *Id.* at 894 (emphasis in original).

equipment or devises." 42 U.S.C. § 12111(9). "Approved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is automatically unqualified under the ADA." *Terre v. Hopson*, 708 F. App'x 221, 228-29 (6th Cir. 2017) (citing *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) ("The presumption that uninterrupted attendance is an essential job requirement improperly dispenses with the burden-shifting analysis set forth in *Monette*.")). To establish this element, Plaintiff "need only demonstrate that []he was objectively qualified for the position." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, No. 1:05-CV-117, 2012 WL 1931667, at *4 (S.D. Ohio May 29, 2012) (relying on *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574-76 (6th Cir. 2003)). The Court's "inquiry should focus on Plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* (citing *Wexler*, 317 F.3d at 576).

Here, the relevant question is whether Plaintiff can demonstrate that he was able to perform the essential functions of his general maintenance position within Defendant's Public Works Department. Defendant argues that Plaintiff cannot because, when he was terminated, he was on medical leave and had been for sixth months, did not inform Mr. Smith of an exact date regarding when he would return to work, and, in a March 2015 letter, his counselor noted that his PTSD symptoms "cause clinically significant distress and interfere with [his] daily functioning." (Doc. 61 at PageID 1499-1500) (citing (Doc. 55, Attachment 3, Ex. D at PageID 1322)). Plaintiff asserts that he was qualified because, when he was terminated, he was on medical leave approved by Mr. Smith and Defendant's Solicitor and his PTSD would not have prevented him from performing his

responsibilities.  (Doc. 62 at PageID 1506, 1515) (citing (Doc. 46, p. 36); (Doc. 60, ¶ 45)).

After Plaintiff's involuntary period of administrative leave ended on September 23, 2014, Mr. Smith informed Defendant's Mayor, Vice Mayor, and Village Council that that "based on correspondence received from his medical provider, [Plaintiff] will be on sick leave until further notice."  (Doc. 28, Attachment 1, Ex. 10 at PageID 760).  Mr. Smith testified that he worked with Defendant's Solicitor to approve Plaintiff's use of his accrued sick leave beginning on September 23, 2014.  (Doc. 46, p. 36-38, 42-44).  Although Defendant would like the Court to ignore Plaintiff's testimony, and Mr. Smith's confirmation thereof, that he communicated a hope to return to work by the middle of March 2015 or within the first couple weeks of March and his belief that he was ready to return to his normal job responsibilities, the Court will not.  *Compare* (Doc. 61 at PageID 1500), *with* (Doc. 46, p. 45-46); (Doc. 60, ¶ 38, 39 at PageID 1456).

Moreover, Plaintiff was on paid medical leave approved by his direct supervisor who, before approving the paid medical leave, consulted with Defendant's Solicitor about the propriety of such paid medical leave.  Further, similar to the analysis regarding his ADEA claim, other than Plaintiff's use of his sick leave from September 2014 through March 2015, in light of his PTSD diagnosis and treatment, there is no record evidence suggesting that he was unable to maintain Defendant's parks, streets, basic water system testing, or vehicles or was otherwise unqualified for his general maintenance position.  Finally, Defendant's reliance on Plaintiff's counselor's March 2015 letter conflates the evidence regarding Plaintiff's qualifications with its proffered nondiscriminatory reason for his termination.  *See e.g.*, *Cline*, 206 F.3d at 660-61.  The Court finds that Plaintiff was qualified at the time of his termination for purposes of the prima facie case.  *See Cehrs*,

155 F.3d at 782; *Terre*, 708 F. App'x at 228-29.

Turning to the third element, "[a]n adverse employment action is 'a materially adverse change in the terms of [the employee's] employment.'" *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 419 (6th Cir. 2015) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). Plaintiff's termination is a sufficient adverse employment decision. Accordingly, Plaintiff meet his burden at the prima facie case stage.

### ii. Legitimate, nondiscriminatory reason for Plaintiff's termination and pretext

The Court will not repeat its analysis and finding that Defendant articulated a legitimate, non-discriminatory reason for Plaintiff's termination. Similarly, as the same issues of fact apply regarding Plaintiff's showing of pretext, neither party is not entitled to summary judgment.

Defendant contends it had an honest belief in its proffered reason for Plaintiff's termination because Mr. "Smith held an honest belief that the work that was being pledged to the taxpayers was not being done." (Doc. 63 at PageID 1539-40); *see* (Doc. 65 at PageID 1577-78). After a plaintiff meets its burden to establish pretext, "[t]he honest-belief rule is, in effect, one last opportunity for the defendant to prevail on summary judgment. The defendant may rebut the plaintiff's evidence of pretext, by demonstrating that the defendant's actions, while perhaps mistaken, foolish, trivial, or baseless, were not taken with discriminatory intent." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714-15 (6th Cir. 2007) (internal citations omitted). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Defendant's honest belief rule analysis is misguided, as its asserted honest belief—that

Mr. Smith believed Plaintiff's work was not getting done—is contradicted by Mr. Smith's testimony that the work was getting done, just by Plaintiff's co-worker, Mike Hanna, Mr. Smith, and Defendant's Chief of Police. Moreover, Defendant provides no analysis that it made a reasonably informed and considered decision before terminating Plaintiff; rather, Defendant summarily asserts that Mr. Smith held an honest belief that work was not getting done. *See Seeger*, 681 F.3d at 285. Thus, the honest belief rule is inapplicable for summary judgment purposes in this matter.

### d. Wrongful Termination in Violation of Public Policy

"Plaintiff concedes that, as an unclassified public employee, his status is that of an 'at-will' employee who can be terminated without cause, all other things being equal (*i.e.*, if no exception to the at-will employment doctrine applies" and states that, "[b]arring an exception, his termination without cause would eliminate failure of due process as a justification for an attack on [his] termination." (Doc. 62 at PageID 1522). He contends, however, that his termination qualifies "for an exception to the at-will employment doctrine because it implicated major public policy concerns and, in doing so, is subject to an exception for the tort of wrongful discharge in derogation of public policy." (*Id.*). In the Complaint, he identifies "the public policy of supporting efforts to eliminate corruption" and points to "common law." (Doc. 3 at PageID 10-11). In his Motion for Summary Judgment, he identifies the public policy of "addressing public corruption" and points to the Ohio whistleblower statute, Ohio Rev. Code § 4113.52.[5] (Doc. 62 at PageID 1524). In his Response in Opposition to Defendant's Motion for Summary Judgment, he identifies the

---

[5] Although he references Ohio Rev. Code § 2921.43 ("Soliciting or receiving improper compensation"), he does not cite this statute in his Complaint or explain how his actions would fall under that provision of the Ohio Revised Code and the Court will not consider it. (Doc. 62 at PageID 1524).

public policies of "attempting to clean up corruption" and "reporting illegal activity" and states that the source of those public policies are "codified in [Ohio Rev. Code §] 4113.52" and "exist[] in the common law that gave rise to the adoption of the statute." (Doc. 64 at PageID 1563, 1565).

Traditionally, employment in Ohio is governed by the common law doctrine of employment-at-will. *See Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 241, 2002-Ohio-3994, 773 N.E.2d 526; *Collins v. Rizkana*, 1995-Ohio-135, 73 Ohio St. 3d 65, 67, 652 N.E.2d 653, 656. "The Ohio Supreme Court, however, recognized an exception to this doctrine when an employee has been wrongfully discharged in violation of public policy as set forth in the statutory enactments" and such a claim "is commonly referred to as a 'Greeley claim.'" *Tracy v. Northrop Grumman Sys. Corp.*, No. 1:08CV126, 2009 WL 690255, at *2 (S.D. Ohio Mar. 12, 2009), *aff'd*, No. 10-3930, 2011 WL 6965839 (6th Cir. Dec. 21, 2011) (citing *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990)). "The Ohio Supreme Court later expanded the scope of such *Greeley* claims to encompass employees who have been wrongfully discharged in violation of public policy, not only as set forth in [statute] but also in violation of the Ohio and United States Constitutions, administrative rules and regulations, and common law." *Id.* at *2 (*citing Painter v. Graley*, 1994-Ohio-334, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994)).

To establish a *Greeley* claim, a plaintiff "must show (1) 'a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)'; (2) dismissal 'under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy

element)'; (3) 'the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)'; and (4) lack of an 'overriding legitimate business justification for the dismissal (the overriding justification element).'" *Hale v. Mercy Health Partners*, 617 F. App'x 395, 402 (6th Cir. 2015) (citing *Collins*, 73 Ohio St. 3d at 69-70, 652 N.E.2d 653). "The first and second elements are questions of law for the court to decide, but the jury decides questions of fact relating to the latter two elements." *Id.*

To satisfy the clarity element, a plaintiff must demonstrate the existence of an established public policy that was violated by his discharge and "must point to a specific provision in the federal or state constitution[s], federal or state statutes, administrative rules and regulations, or common law." *Id.* (internal citations omitted). The Ohio whistleblower statute, Ohio Rev. Code § "4113.52[,] does not preempt a common-law cause of action against an employer who discharges [] an employee in violation of that statute." *Kulch v. Structural Fibers, Inc.*, 1997-Ohio-219, 78 Ohio St. 3d 134, 162, 677 N.E.2d 308, 329. However, "[w]here an at-will employee's common-law claim embodies only the public policy set forth in Ohio Rev. Code § 4113.52 . . . , the employee must strictly comply with the requirements of that statute." *Seig v. Mercy Franciscan at Schroeder*, No. 1:13-CV-672, 2015 WL 1036085, at *8 (S.D. Ohio 2015) (citing *Kulch*, 78 Ohio St. 3d at 162). Indeed, "[w]hile an at-will employee may maintain a common-law public-policy claim regardless of whether she complied with the strict requirements of § 4113.52, to do so []he must identify 'a source of public policy separate from the public policy embodied in [§ 4113.52].'" *Id.* at *8 (citing *Kulch*, 78 Ohio St. 3d at 162).

Plaintiff acknowledges that "the facts of [his] case do not fit clearly within the [Ohio whistleblower] statute," as his actions were "limited to the reporting of instances of public

corruption to the appropriate authorities." (Doc. 62 at PageID 1524); (Doc. 64 at PageID 1565). Moreover, aside from generally referring to the common law prohibition on whistleblowing, he does not identify a source of public policy separate from that embodied in the Ohio Whistleblower statute. As he sets forth no argument or evidence that he complied with the requirements of Ohio Rev. Code § 4113.52 and fails to identify a source of public policy separate from the public policy embodied in that statute, he fails to establish foundation for a *Greeley* claim. *See Kulch*, 78 Ohio St. 3d at 162; *cf. Hale v. Mercy Health Partners*, 20 F. Supp. 3d 620, 640, n.14 (S.D. Ohio 2014), *aff'd*, 617 F. App'x 395 (6th Cir. 2015) ("[I]t is Plaintiff's burden to satisfy the clarity element and the Court may not fill in the blanks *sua sponte*."). As he fails to satisfy the first element required to prove a wrongful termination in violation of public policy, the Court need not address the other three elements. Plaintiff's wrongful termination claim fails as a matter of law and cannot survive Defendant's Motion for Summary Judgment.

### e. Breach of Employment Contract

Defendant moves for summary judgment of Plaintiff's "breach of employment contract claim because Plaintiff is an at-will employee." (Doc. 61 at PageID 1495-96). The Court reiterates Plaintiff's concession "that[,] as an unclassified public employee, his status is that of an 'at will' employee under Ohio law who can be terminated without cause, all other things being equal (*i.e.*, if no exception to the at-will employment doctrine applies)." (Doc. 62 at PageID 1522). Nothing in Plaintiff's Response negates his prior concession and the Court notes Plaintiff failed to file a Reply to support his Motion for Summary Judgment clarifying the confusion.[6] Consequently, Defendant's Motion for

---

[6] The Court agrees that the portion of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment that could be interpreted as responding to Defendant's arguments regarding his termination in

Summary Judgment is granted as to this claim.

### f. Public Hearing and Estoppel

Plaintiff does not raise any arguments in response to Defendant's Motion for Summary Judgment regarding his claims for termination without a public hearing or estoppel. *Compare* (Doc. 61 at PageID 1492-98); (Doc. 65 at PageID 1584, n.4), *with* (Doc. 64). In light of his failure to respond to Defendant's arguments, the Court considers these claims abandoned. *See Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (affirming trial court's finding that party's failure to properly respond to the arguments raised in a motion for summary judgment constituted an abandonment of those claims). Defendant's Motion for Summary judgment is granted as to those claims.

### g. Retaliation and Intentional Infliction of Emotional Distress

Although Defendant moves for summary judgment as to all of Plaintiff's claims, it fails to mention, let alone analyze, Plaintiff's retaliation and intentional infliction of emotional distress[7] claims. *Compare* (Doc. 3 at PageID 13-14), *with* (Doc. 61). The Court will not manufacture arguments on Defendant's behalf, or anticipate Plaintiff's responses thereto, and denies Defendant's Motion for Summary judgment as to these two claims.


## IV. CONCLUSION

Based on the foregoing,

1. Defendant's Motion to Strike Portions of Plaintiff's Affidavit (Doc. 66) is properly

---

violation of an employment contract claim is vague and confusing in light of his prior concession. *Compare* (Doc. 65 at PageID 1583), *with* (Doc. 64 at PageID 1565, 1567-68).

[7] The Court acknowledges that mental and emotional distress can be a part of a possible and/or eventual damages award in certain discrimination cases and clarifies that Plaintiff appears to assert a claim, under Ohio law, for the tort of intentional infliction of emotional distress.

construed as an objection and is **SUSTAINED IN PART AND OVERRULED IN PART**;

2. Plaintiff's Motion to Strike or Otherwise Disregard Defendant's Motion to Strike (Doc. 67) is properly construed as an objection and is **SUSTAINED IN PART AND OVERRULED IN PART**;

3. Plaintiff' Motion for Summary Judgment (Doc. 62) is **DENIED**; and

4. Defendant's Motion for Summary Judgment (Doc. 61) is **DENIED IN PART and GRANTED IN PART** as follows:

    a. Summary judgment is **DENIED** on Plaintiff's ADEA, ADA, retaliation, and intentional infliction of emotional distress claims;

    b. Summary judgment is **GRANTED** on Plaintiff's wrongful termination in violation of public policy, termination without a public hearing, estoppel, and termination in violation of an employment contract claims.

**IT IS SO ORDERED.**

/s Michael R. Barrett
Michael R. Barrett, Judge
United States District Court